## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MISTY ANN JEMISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17-cv-01545-JEO |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Misty Ann Jemison brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), Fᴇᴅ. R. Cɪᴠ. P. 73(a). (Doc. 9). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff first filed for DIB on July 30, 2009, alleging disability since June 15, 2009. She also filed for SSI on August 17, 2009. In a decision dated December 21, 2010, an administrative law judge ("ALJ") found Plaintiff not disabled. (R. 1155).[2] The Appeals Council ("AC") reviewed this decision and found that the ALJ failed to adequately address certain opinion evidence and Plaintiff's mental residual functional capacity and vacated and remanded the decision on May 31, 2011. (*Id*.). On September 14, 2012, the previous ALJ found again that Plaintiff was not disabled. (*Id*.). The AC denied Plaintiff's request for review on May 20, 2014. (*Id*.). Plaintiff appealed to the United States District Court for the Middle District of Alabama, Northern Division and on February 10, 2015, that Court found that the ALJ failed to fully develop the record regarding Plaintiff's impairments, failed to consider Plaintiff's inability to afford medical treatment, and failed to adequately resolve conflicting reports of the physicians regarding the need for medications. (R. 1155-56). The Court reversed the hearing decision and remanded the case to the Commissioner. (*Id*.). On May 31, 2017, another ALJ decided for a third time that Plaintiff is not disabled. (R. 1198). The

---

[2] References herein to "R. __" are to the administrative record found at Docs. 7-1 through 7-29 in the court's record.

AC denied Plaintiff's request for review on July 31, 2017.  (Doc. 1 at 1).

## II.  FACTS

Plaintiff was 41 years old at the time of the ALJ's decision that is under review.  (R. 1163).  She has completed high school and she has taken three or four college courses.  (*Id.*)  She previously worked as a clerk and bookkeeper.  (R. 1196).  She alleges disability due to various medical issues including neck and back pain, headaches, bipolar disorder, anxiety, and depression.  (R. 354).

Following Plaintiff's administrative hearing, the ALJ found that she had the medically determinable severe impairments of mild osteoarthritis with disc bulge of the cervical spine; mild multi-level degenerative disc disease of the lumbar spine; chronic obstructive pulmonary disease; obesity; bipolar disorder; personality disorder; and anxiety/panic disorder/obsessive compulsive disorder.  (R. 1158).  She also found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment.  (R. 1159).  She further found that Plaintiff had the residual functional capacity ("RFC") to perform light work with limitations.  (R. 1162).  She determined that Plaintiff could not perform her past relevant work but could perform the requirements of representative occupations such as a garment sorter, folder, or small parts assembler.  (R. 1197).  The ALJ ultimately concluded that Plaintiff was not

disabled. (*Id.*).

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal

analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

whether the claimant: (1) is unable to engage in substantial gainful

activity; (2) has a severe medically determinable physical or mental
impairment; (3) has such an impairment that meets or equals a Listing
and meets the duration requirements; (4) can perform his past relevant
work, in light of his residual functional capacity; and (5) can make an
adjustment to other work, in light of his residual functional capacity,
age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[3]  The

claimant bears the burden of proving that she was disabled within the meaning of

the Social Security Act.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005);

*see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The applicable "regulations place a

very heavy burden on the claimant to demonstrate both a qualifying disability and

an inability to perform past relevant work."  *Id.*

## V.  DISCUSSION

Plaintiff asserts that the ALJ erred in that she (1) failed to pose a complete

hypothetical question to the vocational expert ("VE") and (2) failed to properly

credit (a) the side effects of Plaintiff's prescribed medication upon her ability to

work and (b) Dr. Nicholas Pantaleone's opinion regarding the same.  (Doc. 10 at 4-

5).  More specifically, Plaintiff argues that the ALJ failed to include all of

Plaintiff's limitations in the hypothetical question and did not provide adequate

rationale with respect to the effects and resulting limitations imposed by her

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered
binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

medications.  (*Id*. at 11, 13).  The Commissioner argues that the ALJ properly evaluated Plaintiff's limitations when posing the hypothetical question, credited the medication side effects, and found that substantial evidence supports the conclusion that Plaintiff is not disabled.  (Doc. 12 at 4).

## A.    Incomplete Hypothetical

Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 419.912(a) & (c); *Moore,* 405 F.3d at 1211; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  Specifically, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms.  *See* 20 C.F.R. § 419.929; *Dyer v. Barnhart*, 359 F.3d 1206, 1210 (11th Cir. 2005); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).  In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself.  *See* 20 C.F.R. § 416.929(c)(1); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("severity of … a disability … must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality").

Plaintiff first argues that the VE's testimony is flawed in that it was premised upon an incomplete hypothetical question. (Doc. 10 at 11). Specifically, Plaintiff argues that the hypothetical posed by the ALJ did not include Dr. Larry H. Dennis and Dr. Arnold Mindingall's full opinions. (*Id.* (citing R. 1162 & 1230-31)). The Commissioner responds that Plaintiff has failed to show that the medical or opinion evidence warranted any greater restrictions than what the ALJ assessed in her RFC finding. (Doc. 12 at 22). The court agrees.

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011)).

The hypothetical posed to the VE by the ALJ in this case includes, in pertinent part, refers to an individual who could perform light work except that the person can only have occasional interaction with supervisors, coworkers and the public and should have occasional changes in the routine work setting. (R. 1230). Plaintiff asserts this hypothetical is inadequate because it did not include the

complete opinions of Drs. Dennis and Mindingall regarding Plaintiff's moderate limitations with respect to completing a normal work-day without interruptions; interacting with others, including supervisors; and sustaining concentration and persistence. (Doc. 10 at 9). Additionally, she argues that as a result of her moderate deficiencies in these areas she would miss one to two days of work per month due to exacerbation of her psychiatric symptoms. (*Id.*). The Commissioner responds that while the ALJ did not adapt the exact limitations in the opinions of Drs. Dennis and Mindingall, she did use the opinions along with other evidence in the record to pose a hypothetical that incorporated Plaintiff's acknowledged limitations. (Doc. 12 at 7).

First, the evidence shows that Dr. Dennis opined in November 2009 that Plaintiff's medically severe mental impairments would cause her to be moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or proximity to others without being distracted by them; (5) complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of lengthy rest periods; (6)

interact appropriately with the public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) respond to changes in the work setting; and (10) set realistic goals or make plans independently of others.  (R. 848-49).  In expressing Plaintiff's specific work-related limitations Dr. Dennis stated that Plaintiff  "could understand and remember simple instructions, but not detailed ones," "could carry out simple instructions and sustain attention to simple and familiar tasks for extended periods, "could tolerate ordinary work pressures, but should avoid excessive workloads, quick decision making, rapid changes and multiple demands," "could adapt to infrequent, well explained changes," and could "set ordinary daily work goals, but may need assistance with complex goals and planning."  (R. 850).  Dr. Dennis also noted that Plaintiff would benefit from a flexible schedule and would be expected to miss 1-2 days of work per month due to bipolar, depression and possible substance abuse." (*Id*.).  Finally, he noted that Plaintiff "would function best with her own work area/station without close proximity to others." (*Id*.).

Dr. Mindingall similarly noted the same moderate limitations concerning Plaintiff in March 2011.  (R. 1071-72).  He also stated that Plaintiff would be able to handle simple instructions and simple tasks, would be expected to miss one to

two days of work each month due to psychiatric symptoms, should have only

casual interaction with others and supportive, nonthreatening feedback, could

handle gradual and infrequent work setting changes, and would need help with

goal setting and planning.  (R. 1073).

The ALJ gave significant weight to the opinions of Drs. Dennis and

Mindingall regarding Plaintiff's mental functioning abilities because she found

they are generally consistent with her overall mental status exams/ER

examinations and the progress notes of Plaintiff's treating psychiatrist.  (R. 1194).

The ALJ stated:

> These mental health professionals generally agree that claimant has
> no more than moderate limitations in her ability to perform the
> mental demands of basic work activities.  They agree that claimant
> can perform simple tasks with some limited contact with the public,
> coworkers and/or supervisors and that changes in the work setting or
> routine should be presented infrequently to give time for adjustment.

(*Id.*).  The ALJ then stated in her RFC findings that Plaintiff should be restricted to

simple tasks; occasional interaction with supervisors, coworkers, and the public;

and only occasional changes in a routine work setting.  (R. 1162).  While these

restrictions generally encompass some of Drs. Dennis and Mindingall's limitations,

they do not include any specific reference to their assessments that Plaintiff had a

moderate limitation in her "ability to complete a  normal workday and workweek

without interruptions for psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 849, 1072). Thus, the relevant question is whether the absence of this information in the hypothetical that was posed to the VE warrants a remand of this matter for further consideration. The court finds that it does not.

The record, including opinions from multiple doctors, supports the conclusion that the hypothetical question posed to the VE covered the range of Plaintiff's limitations at the relevant time. The ALJ recognized that Plaintiff has a long history of psychological challenges. She was psychiatrically hospitalized at Baptist Medical Center South in August 2009 for one day. (R. 695, 1178). During her stay, she tested positive for marijuana, opioids, and benzodiazepine. (*Id*.). At the time of her discharge, she had a euthymic mood, full affect, and was alert and oriented to time, place and person. (*Id*.). She refused detoxification rehabilitation. (*Id*.). Plaintiff went to Montgomery Area Mental Health Authority ("MAMHA") starting in January 2010 where the staff recommended therapy one to two times per month for the year. (R. 1040). The record reveals that Plaintiff did not comply with this recommended treatment program. (R. 1023-41).

In March 2011, MAMHA noted that Plaintiff had still not been compliant with counseling and, after a mental health examination, noted she had a dysphoric

mood but was otherwise appropriately groomed, had appropriate affect, calm motor activity, normal speech, normal orientation, normal thoughts, and no perceptual disturbances. (R. 1468). Dr. Sreelekha Banerjee at MAMHA saw Plaintiff in May 2013 and observed that she was calm and cooperative during the interview; had speech within normal limits; was alert and oriented times three; had good eye contact; had a mildly anxious mood and affect; had logical thought process; had no psychomotor agitation or retardation; and had fair judgement and insight.[4] (R. 1185). He also saw her on September 3, 2013. During that session, Plaintiff stated that she was "doing well on her psychotropic medicines." (R. 1464). She was somewhat anxious that day, Dr. Banerjee noted that she was out of medication. (R. 1466). Dr. Banerjee further noted that she was doing well while on her medicine. (R. 1464).

Plaintiff also sought mental health treatment at Florence Family Health Care Clinic ("FHCC") twice in 2015 and once in July 2016 (R. 1187, 1189, 1567-68, 1571-75, 1633-34). In May 2015, Plaintiff reported to an examining nurse practitioner at FHCC multiple mental symptoms, but upon examination, had

---

[4] The court notes that the medical notes for Plaintiff at MAMHA vary. At times she reports or is assessed as being dysphoric, depressed, tired, or anxious. At other times, the notes reflect she is doing well. (*See e.g.* R. 1028, 1030-37, 1044-48, 1101-05, 1110-15, 1436-40, 1444-49, 1458-60, 1462, 1464-67).

normal psychological findings and received no specific treatment for her mental symptoms (R. 1187, 1567-69, 1573-74). Plaintiff returned in July 2015, complaining of anxiety. She did not undergo a mental status examination. She received a prescription for Buspirone. (R. 1572-73). Plaintiff last visited FHCC in July 2016. She did not report any specific mental symptoms, but requested a referral to Riverbend Center for Mental Health ("RCMH"). (R. 1633). Plaintiff again had normal psychological exam findings and received the referral. (R. 1633-34).

Plaintiff attended an appointment at RCMH on July 25, 2016, during which she reported a twenty-year history of medication management for "bipolar depression" and anxiety. (R. 1637-38). She underwent a psychiatric evaluation at RCMH in August 2016 with Dr. Warren Scott, which showed Plaintiff had a dysthymic mood but was alert and oriented with normal thought content and process, fair judgment and insight, and normal speech. (R. 1649). Dr. Scott prescribed Cymbalta and Latuda, referred Plaintiff for individual therapy, and advised Plaintiff to follow up with a nurse in one month and with him in three months or as needed and to seek medication assistance. (R. 1645, 1649). Plaintiff attended one therapy session at RCMH in September 2016. She reported that she was sleeping well after starting the Latuda, but she had not stared the Cymbalta

due to financial limitations. (R. 1645). Plaintiff was encouraged to engage in additional activities to help her cope, such as walking her dog. The therapist at RCMH contacted the medication assistance nurse to help Plaintiff with her need for assistance in obtaining her medication. Plaintiff was scheduled for another appointment in five weeks, to avoid a conflict with an anticipated family vacation. (R. 1645-46).

The record also reflects that the ALJ examined the opinions of other doctors who examined Plaintiff. For instance, she gave some weight to the opinion of Dr. W.G. Brantley who examined Plaintiff in October 2009 and August 2014. (R. 841, 1194, 1559). In sum, Dr. Brantley opined following both evaluations that that Plaintiff was cognitively stable and would have no difficulty with coworkers, supervisors, and the public. (*Id*.). He further found in August 2014 that Plaintiff could return to work immediately. (R. 1559).

Dr. Alan Babb conducted consultative physical examinations of Plaintiff in November 2009 and March 2011. In 2009, he found Plaintiff's main issue was chronic back pain. He did note that she "appears to be sedated somewhat…. Clearly no one is going to hire her taking all of that medication." (R. 846). He also noted that he did not believe that she needed all "these chronic powerful pain medications" and "[s]he clearly appears to be depressed and [her] effort and

motivation appear to be very limited." (*Id*.). He completed another examination in March 2011 wherein he noted Plaintiff's history of bipolar disorder, chronic depression and agoraphobia. He observed that she had a very flat, robotic affect and very flat, monotone speech. (R. 1078). He was concerned that she was being overmedicated on antidepressants and narcotics without a documented need for them. (R. 1079). He did observe that she had good intellectual skills, good communication skills, good eye contact, normal cerebellar function, no abnormalities of speech or content, and she did not appear anxious. (R. 1078).

The ALJ gave "some partial weight" to the opinion of Dr. Daniel Clark. Dr. Clark examined Plaintiff in March 2011. He found during cognitive testing that she was alert and oriented, her intellectual abilities likely fell within the low average range, she exhibited some insight, and her judgment and decision-making abilities were impaired due to impulsivity. (R. 1054, 1183). He further found she was moderately impaired in her ability to understand and remember instructions, and she was severely impaired in her ability to respond appropriately to supervision, coworkers, and work pressures. (*Id*.). The ALJ agreed with his opinion that Plaintiff would have moderate limitations in her ability to understand and remember instructions, she did not agree with his opinion that Plaintiff would have severe impairments in carrying out instructions. The ALJ noted that Plaintiff

may have difficulty in carrying out difficult instructions but would not have much difficulty carrying out simple instructions. (R. 1195). The ALJ concluded that "[w]hile [Plaintiff] does suffer from limitations in [social interaction and ability to deal with work pressures], they do not preclude work activity within the parameters of the residual functional capacity assessment." (*Id.*).

The ALJ also gave great weight to the opinion of Dr. James Lindsey. Dr. Lindsey performed a consultative psychological evaluation of Plaintiff in April 2016 and noted that Plaintiff arrived 35 minutes early, was alone, and filled out her paperwork without apparent difficulty. (R. 1188, 1594-97). He stated Plaintiff's relationships with peers and adults at school were good and she quit her job as a bookkeeper in 2009 because of a "nervous breakdown." (*Id.*). Dr. Lindsey also noted that when working, Plaintiff had no difficulty relating with coworkers or supervisors and she denied a history of being fired. (*Id.*). Dr. Lindsey's overall prognosis was that Plaintiff appears to be capable of understanding, remembering, and carrying out instructions; does not appear to have relational issues that would interfere with her ability to maintain employment; her current mental health symptoms appear to be posing mild impairment to the claimant in terms of her employability; and her reported symptom history suggests periods of possible

moderate impairment.[5]  (R. 1189, 1597).

The record also indicates that Plaintiff has no more than moderate limitations regarding her interaction with others and her concertation, persistence, and maintenance of pace.  Plaintiff had no behavior problems in school and her relationships with peers and adults at school were good.  (R. 802, 1162).  When working, she had no difficulty with regard to her relationships with coworkers or supervisors and had never been fired from a job.  (R. 1161, 1595-98).  Immediately before or during the adjudicative period, Plaintiff had been dating her boyfriend, and they later married.  (*Id.*).  She has maintained family relationships in person

---

[5] The full text of his opinion provides:

> The results of the current evaluation suggest the claimant's current mental health complaints appear to be most consistent with bipolar I disorder. It is possible the claimant's mental health condition could improve in the next 6 to 12 months if she engages in outpatient mental health treatment and possibly medications targeting her mental health symptoms. At the time of the current evaluation, the claimant's concentration and attention appear to be average. Memory is intact.  Fund of information is average.  Abstraction is average to below average.  Thought process is normal.  Thought content is normal. Judgment is average.  Insight is limited.  There appears to be no significant intel1ectual impairment.  She can perform some of her activities of daily living without assistance but does not appear capable of independent living.  If awarded benefits, it is advisable to assign a payee.  She appears to be capable of understanding, remembering, and carrying out instructions.  She does not appear to have relational issues that would interfere with her ability to maintain employment.  Based on the claimant's performance on tasks during this evaluation, current mental health symptoms appear to be posing mild impairment for the claimant in terms of her employability.  Her reported symptom history suggests periods of possible moderate impairment.

(R. 1597).

and using Facebook, and has raised a teenage son.  (R. 1161, 841, 1595-98).  As to

concentration, persistence, or maintaining pace, the mental status examinations

done during the adjudicative period have generally shown Plaintiff to be alert and

fully oriented and to have good eye contact, normal thought process, and good

intellectual skills.  (R. 1054, 1078, 1161, 1558-59, 1596).  No marked problems

with attention and concentration were noted.  (*Id*.).

To the extent Plaintiff argues that the ALJ improperly failed to include Drs.

Dennis and Mindingall's opinions that she would miss one to two days of work per

month due to exacerbation of her psychiatric symptoms into her RFC finding (Doc.

10 at 9 (citing R. 849-50 & 1072-73)), the court is not impressed for two reasons.

First, the opinions are not supported by any other specific evidence in  the record.

As recognized above, the ALJ extensively discussed the evidence and properly

limited Plaintiff's RFC.  Second, the VE testified that that employers would allow

up to two days of absences per month, demonstrating that this limitation would not

amount to an additional, greater limitation that should have been included in

Plaintiff's RFC.  (R. 1233).  Thus, this aspect of Plaintiff's claim is without merit.

Placing the opinions of Drs. Dennis and Mindingall in context, particularly

in view of more recent, relevant parts of the record, the court concludes that the

ALJ posed a complete hypothetical to the VE.  The ALJ noted that Plaintiff can

only do light work, should be limited to simple tasks with occasional interaction with supervisors, coworkers and the public, and should get occasional changes in the routine work setting. This covers the moderate limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace and is supported by the previously discussed evidence from the record. Therefore, Plaintiff's claim that the hypothetical question was incomplete is without merit.

## B.    Proper Credit to Side Effects

Plaintiff next argues that the ALJ failed to properly credit the side effects of her prescribed medications upon her ability to work and Dr. Pantaleone's opinion regarding the same. (Doc. 10 at 11). In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms. *Walker v. Commr of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv)). However, the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Thus, Plaintiff must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work. *Id*.

At her second administrative hearing, Plaintiff's former counsel brought attention to numerous comments throughout the record about Plaintiff appearing sedated, which is a side effect of her prescription medications for her chronic pain and psychological conditions. (Doc. 10 at 11-12 (citing R. 53)). Plaintiff also testified at that hearing that she was taking Lortab, Percocet and Soma. (*Id.* (citing R. 58)). In her third administrative hearing, Plaintiff testified again to the side effects of her medication, stating that "[i]t's caused me to be dizzy. It's caused me to not be able to function, I mean not even be able to move to get out of bed. They caused nausea, constipation, it's just a long list." (R. 1224). Dr. Pantaleone expressed in a September 2010 deposition that side effects from prescribed medications made "it harder to work. Because if you're taking a lot of medicine, you can become somnolent and sleepy, and then you can't concentrate, things like that. I have tried her on a stimulant at one time… Adderall… and it exacerbated her anxiety, so I had to wean her off that." (R. 895-96).

Plaintiff asserts that the ALJ failed to provide adequate rationale with respect to the effects and resulting limitations imposed by her medications or include any concentration-related limitations caused by medication side effects into her RFC finding. (Doc. 10 at 13). The court disagrees. The ALJ addressed the medication side effects multiple times in her opinion, first by noting that Plaintiff

21

testified that they made her "unable to function and [caused her] to experience dizziness, nausea, constipation, and difficulty with concentrating and focusing." (R. 1163). The ALJ also noted that while receiving treatment at MAMHA, Plaintiff generally denied having or reported no side effects from medications. (R. 1184-85, 1430-39, 1444-46, 1448, 1464, 1466, 1468). However, on January 31, 2013, Plaintiff reported that taking Trazodone made her sluggish in the morning. In May 2013, she reported it made her experience nightmares. Accordingly, the medication was discontinued at that time by her psychiatrist, Dr. Bannerjee. (R. 1444, 1468).

The ALJ noted that examining consultants mentioned some sedation effects in Plaintiff's presentation. For instance, the ALJ discussed Dr. Alan M. Babb's November 2009 report that Plaintiff looked "somewhat" sedated and that he was concerned that she was taking more medication than needed.[6] (R. 846, 1192). However, the ALJ also noted that Dr. Babb opined in the same examination that Plaintiff had briskly reactive pupils, normal cerebellar function, and normal peripheral reflexes. (R. 845-46, 1192). The ALJ further noted Plaintiff's initial August 2009 disability report and her December 2009 disability report on appeal,

---

[6] Dr. Babb also noted this concern in his March 2011 evaluation of Plaintiff. (*See* R.1079). The ALJ considered all of Dr. Babb's information along with all of the other evidence concerning medication side effects. (*See* R. 1165, 1181, 1184).

where she was requested to list side effects from any prescribed medications. In her first report, she did not list anything in the side effect blanks, and in her report on appeal she explicitly listed "none" by each medication. (R. 361, 414). The ALJ also gave little weight to the opinion of Dr. Pantaleone because the two functional assessments he performed in August 2011 and February 2014 were inconsistent with one another and in most instances, Dr. Pantaleone's progress notes only contained Plaintiff's complaints and refills of medications. (R. 520-59, 806-37,1193, 1481-1549).[7] They did not indicate difficulties with side effects of concerning her medication. Plaintiff has not shown that the ALJ's assessment of the foregoing evidence is incorrect.

In summary, the ALJ considered Plaintiff's complaints of medication side effects coupled with the other evidence in the record and decided it was appropriate to restrict Plaintiff to only simple tasks, occasional interaction with supervisors, coworkers, and the public, and a routine work setting involving occasional changes. (R. 1162). The court finds that while Plaintiff's testimony highlights complaints of medication side effects, the record supports the ALJ's finding that Plaintiff is not as limited as she alleges and the correctness of her RFC

---

[7] Plaintiff did complain one time – October 2007 – that she was having difficult focusing. However, there is no indication that this issue related to a specific medication she was taking. (R. 523, 829, 1511).

determination that Plaintiff can perform light work with various limitations. Plaintiff's challenges do not adequately refute the ALJ's determination that she is not disabled.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed.  An appropriate order will be entered separately.

**DONE,** this the 22nd day of August, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge